472 P.2d 764 (1970)
CORBIN DOUGLASS, INC., a Colorado corporation, Plaintiff in Error,
v.
James KELLEY, d/b/a Longmont Mooney, or Longmont Mooney, Inc., Defendant in Error.
No. 70-235. (Supreme Court No. 23123.)
Colorado Court of Appeals, Div. II.
July 7, 1970.
*765 Stevens Park Kinney II, Denver, for plaintiff in error.
John H. Bisbee, Boulder, for defendant in error.
Selected for Official Publication.
PIERCE, Judge.
This case was originally filed in the Supreme Court of the State of Colorado and subsequently transferred to the Court of Appeals under authority vested in the Supreme Court.
The parties appear here in the order they appeared in the trial court and will be referred to hereinafter by their appropriate designation. Also involved, but not parties to the instant action, are the Insurance Company of North America and Federal Insurance Company, referred to hereinafter as "INA" and "Federal."
This case arises out of a complicated factual situation. Defendant operated a flying service in Longmont, Colorado, and owned several aircraft in connection therewith. Plaintiff is an insurance agency specializing in aircraft insurance, through which, for a number of years, defendant procured his insurance. In November of 1963, plaintiff obtained for defendant a policy from Federal covering certain of the latter's aircraft, including a Mooney Super 21; this policy was in effect on June 1, 1964. The Federal policy was "non-reporting"  i. e., it insured only aircraft specifically designated and described in the policy for specific values in consideration of a fixed annual premium.
Sometime prior to June 1, 1964, defendant, concerned over the high amount of his premiums, contacted plaintiff about the possibility of reducing them by changing to a policy under which they were charged commensurate with the hours his aircraft were flown rather than by fixed rate. Such policies are known as "reporting" policies; they cover all aircraft owned or leased by an insured at the inception of his policy, or acquired during its effective period, without specific designation in the policy. The insured is allowed to include under, or delete from, coverage whatever aircraft he desires, simply by reporting their inclusion or deletion on periodic reports submitted through his insurance agent to the insurer. These reports additionally inform the insurer of the value of each aircraft reported (as assigned by the insured) and the number of hours each has flown during the reporting period. The insurer then calculates total premiums due for coverage on each reported aircraft during that reporting period, based upon its value and the number of hours it has been flown. A premium "deposit" is collected at the inception of the policy.
As a result of these discussions, plaintiff (through its Vice President, Howell) undertook to obtain a "reporting" policy for defendant. Although plaintiff obtained a policy from INA, effective on June 1, 1964, and sent a copy thereof to defendant on or about June 17, 1964, defendant did not receive the copy until approximately August 20, 1964, and was accordingly unfamiliar with the terms of the policy until that date. Plaintiff cancelled the existing Federal policy, retroactive to June 1, 1964, apparently without defendant's authority *766 and without prior notice to him. Required premium deposits on the INA policy were paid by plaintiff, in part by advancing its own funds, as it had done in the past, and in part from returned, unearned premiums on the cancelled Federal policy.
The INA policy provided, among other things, that if an insured aircraft were totally destroyed, an additional premium was collectible; this was to be calculated in a manner we are unable to determine since the text of the applicable provision as it appears in the copy of the INA policy offered into evidence has been partially obliterated.
On June 9, 1964, the Mooney in question crashed, sustaining a controverted amount of damage. Some six weeks thereafter, INA issued a check for $16,901.40 (on July 27, 1964) in settlement, which defendant accepted. INA apparently determined the settlement amount by (1) treating the aircraft as a total loss with an actual cash value of $17,401.40; and (2) deducting $500 under a deductible provision in the policy. The record shows, however, that the actual cost of the aircraft to defendant had been $18,420. There was testimony that its retail value was $22,000 to $23,000 and that it had been flown approximately 140 hours. The record also shows defendant had never assigned a value to the aircraft for purposes of the INA "reporting" policyhaving, first, been unaware that the policy had been obtained, and having, second, received no forms on which to report its value until well after the accident. It is undisputed, however, that when defendant finally did receive his copy of the policy and the necessary "reporting forms," he did not report the value of the aircraft, instead instructing Howell to report it "as per" the previous Federal policy (which reflected a $21,000 value); but that somehow INA's records reflected the aircraft's value to be $17,500  a valuation which INA evidently unilaterally assigned without defendant's knowledge.
By treating the aircraft as a total loss, the "additional premium for total loss" provision became effective. The total loss premium was not charged, however, until September of 1964, some four months after the accident and some two months after the settlement. It was not paid until December of 1964, when plaintiff, without defendant's knowledge, advanced its own funds to pay it. Plaintiff then billed defendant who refused to pay, resulting in the suit which is the subject of this appeal. Plaintiff sought to recover the total loss premium of $696.29, in addition to $202.21 in other miscellaneous advances made by it on defendant's behalf.
Trial was held to the court, which found generally for defendant and made several specific findings, among which were the following:
"* * *
"4. On June 1, 1964, the plaintiff, without express authority, without first showing the policy to defendant, and without prior notification to defendant, purchased [the INA reporting policy] to replace coverage of [the Federal policy] on [a] 1964 Mooney Super 21. Said policy did not specify any value for [the] 1964 Mooney Super 21.
"* * *
"9. Defendant would not have accepted [the INA reporting policy] or its paragraph 8 entitled `Additional Premium for Total Loss' had he not been informed that it was his sole coverage for his airplane damage loss, and there was no meeting of the minds between plaintiff and defendant about cancelling the old policy and putting the new one in force, and defendant never authorized plaintiff to put any policy in force which would value the said plane at other than $19,000.
"* * *
"12. The airplane was not totally destroyed, and in that plaintiff acted without the authority and knowledge of defendant and placed defendant in a position where he lost at least $1,500 by plaintiff's unauthorized acquisition of a new policy and cancellation of an old, defendant is entitled to setoff of the *767 $898.50 claimed and further was not bound and required to pay the $696.29 thereof that constituted total loss premium."
Based on these findings, the court entered judgment of dismissal on plaintiff's entire claim. Plaintiff's motion for new trial was denied and error taken.
Plaintiff makes several assignments of error which we have consolidated under the following headings:
1. The court's finding no. 4, quoted supra, was erroneous because not supported by the evidence;
2. The court erred in not finding plaintiff to be an agent of defendant, the principal, thereby prohibiting the latter from denying the propriety of the former's actions in purchasing the policy.
3. The court erred in not finding defendant bound by the settlement which he accepted, and in finding that defendant was improperly forced to accept the benefits of the INA policy;
4. The court erred in permitting defendant to accept the benefits and protection of the policy, and the loss paid of $16,901.40, while permitting him to escape repayment of premiums advanced by plaintiff;
5. The court erred in permitting defendant to set off the $1,500 it found defendant to have lost by plaintiff's unauthorized purchase of the subject policy against plaintiff's claim.

THE COURT'S FINDINGS
Plaintiff first asserts that the trial court's finding no. 4, quoted supra, is not supported by the evidence, and is contrary thereto.
Bearing in mind that this finding was addressed to the specific INA policy purchased, we find, after a careful review of the record, no evidence that defendant knew of its purchase or of its specific terms. Any knowledge of the purchase was obtained after the accident; any definitive knowledge of the policy's terms was obtained approximately two months after the accident and one month after the settlement, when defendant first received his copy of the policy. At best, plaintiff's evidence showed only authority to try to solicit an offer for the issuance of a reporting policynot authority to obtain this specific policy. That the policy obtained did not ascribe a value to the Mooney aircraft until well after the accident, and then a unilaterally determined value of which defendant was unaware, is clear from the record.
The matter of plaintiff's authority to cancel the existing Federal policy was hotly disputed. As such, it was an issue for the trial court as finder of fact to resolve; its resolution is supported by evidence and will, accordingly, not be disturbed on review. Whatley v. Wood, 157 Colo. 552, 404 P.2d 537.
We therefore hold that error assigned to the trial court's finding no. 4 is without merit. The finding is sustained.

THE AGENCY ISSUE
Plaintiff then asserts error by the trial court in not finding an agency between plaintiff and defendant, the existence of which precluded defendant from denying the acts of plaintiff (presumably, here, referring to initial purchase of the INA policy and to payment of the additional premium well after settlement). We find this assertion also to be without merit, since by statute the agency established was between INA and plaintiff, and not between defendant and plaintiff. C.R.S.1963, 72-1-25; see also Mike Occhiato Mercantile Co. v. Allemania Fire Insurance Co., 98 F.Supp. 888 (D.Colo.). Therefore, there is no bar on that ground in the instant case.

REPUDIATION OF SETTLEMENT; FORCED ACCEPTANCE OF BENEFITS OF THE POLICY
Plaintiff next asserts that having accepted a settlement check from INA, defendant is bound by that settlement and may not subsequently repudiate it, and cites cases in support of this proposition.
*768 We agree with that principle. However, our review of the record indicates defendant has not sought to repudiate the settlement; he sought only to escape judgment in behalf of plaintiff for the additional "total loss" premium advanced by plaintiff.
Further, we were unable to find in the record any pronouncement by the trial court to the effect that defendant was "improperly forced to accept the benefits of the policy," although there is some evidence in the transcript to this effect. No such finding being present, we will not attempt to discuss its propriety, except to note that even if such finding were present, and even if it were erroneous, it would seem immaterial to the issue of a debt flowing from the defendant to plaintiff for the premiums advanced by plaintiff.

ACCEPTANCE OF BENEFITS UNDER THE POLICY VERSUS OBLIGATION TO REIMBURSE FOR PREMIUMS ADVANCED
Plaintiff next asserts that the court committed an error in permitting defendant to accept settlement under the INA policy without paying plaintiff for premiums advanced on defendant's behalf in connection therewith. The substance of plaintiff's contention seems to be that defendant, by his acceptance of the settlement of July 27, 1964, ratified the INA policy and plaintiff's unauthorized acts and is therefore estopped from denying his obligation to plaintiff for premiums the latter advanced in connection with the policy.
This contention must fail.
If plaintiff means that by acceptance of the settlement defendant ratified the "additional premium for total loss" provision and that this ratification was binding upon him in his relationship with plaintiff, we determine that any such ratification would be possible only if defendant were aware of that provision at the time he accepted the settlement, which it is undisputed he was not. The record is clear that at no time before receipt of his copy of the policy (which the trial court found on the evidence to be on approximately August 20, 1964  three weeks after the settlement) was defendant aware of the total loss provision; nor was he informed of it in any way at any time prior to the settlement. Under these circumstances, defendant can hardly be held to have ratified something of which he was unaware; and it is this lack of awareness which distinguishes the instant case from Kantoff v. Sedlak Motor Sales, Inc., 8 Ill.App.2d 8, 130 N.E.2d 289, cited by plaintiff in support of its argument. Nor, for the same reason, can defendant be logically held to have ratified a gratuitous advancement of a premium occurring five months after the alleged ratification of that advancement.
If plaintiff means that it has a right to recover based upon a contract with the defendant to procure insurance, this right must be determined in light of plaintiff's performance under that contract  i. e., if it is to recover on a debt allegedly owing as a result of performance of the contract, it must first show the fact of that performance.
We note from the record that whether or not plaintiff properly performed under any contract to procure insurance (assuming there was one) was hotly disputed. Plaintiff endeavored to show by testimony that it was instructed to obtain a reporting policy and that it did so. Defendant contended, however, that plaintiff was instructed to obtain a reporting policy which insured defendant's aircraft "as per" values reflected in an already existing policy at the least possible premium cost, and introduced evidence to support this contention and to support the proposition that plaintiff did not do as instructed. Defendant's evidence was that plaintiff, instead, procured a policy insuring his aircraft for substantially less than the amounts requiredwhether by its own action or by that of its principal, INA.
Under these circumstances, we determine that the trial court could justifiably, as it *769 did in the findings quoted supra, find that plaintiff did not properly perform; but that it, instead, performed in an unauthorized manner to the detriment of the defendant, and that therefore defendant ought not be held liable to plaintiff for costs incurred by the latter in this performance.

THE SETOFF
Plaintiff finally assigns as error the court's finding (no. 12, supra) that defendant was entitled to a setoff. We note from the record that at no time, either in the pleadings or at trial, was the matter of a setoff raised or otherwise put in issue by the parties.
A setoff is a counterclaim, New Hampshire Fire Ins. Co. v. Perkins, D.C., 30 F.R.D. 382, and in this case, since arising from the same subject matter or occurrence as plaintiff's claim, a compulsory counterclaim. Therefore, it is governed by R.C.P.Colo. 13(a), which requires that it be affirmatively pleaded. Since it was not raised in the pleadings or otherwise put into issue, the trial court was precluded from rendering a finding on the matter and erred by so doing.
The nature of the suit before us does not bring forth any issues that might have arisen regarding the rights and duties under the contract between defendant and INA. This is strictly a suit sounding in debt in which plaintiff has claimed certain moneys are due him by virtue of his advancement of premiums. Defendant defends on the ground that he does not owe the debt, in that plaintiff went beyond the scope of the authority extended to him, and that defendant did not ratify his acts. The court found that plaintiff failed to carry his burden of proving that the payments were made within the scope of the authority. We will not disturb this determination.
For the reasons advanced supra, the judgment of the trial court in favor of defendant on the issue of his liability for the "total loss" premium of $696.29 is affirmed; but judgment as to the setoff is reversed, with instructions to enter judgment in favor of plaintiff for $202.21, the balance of the amount claimed by plaintiff.
COYTE and DUFFORD, JJ., concur.